UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS R. ROE, ELMER BUSH, RONALD K. HUFF and JEROME MCLAUGHLIN on behalf of themselves and the Arch Coal, Inc. Employee Thrift Plan, and/or on behalf of a class consisting of similarly situated participants of the Plan,<br><br>   Plaintiffs,<br><br>  vs.<br><br>ARCH COAL, INC., et al.,<br><br>   Defendants. | Case No. 4:15-CV-910 (CEJ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the separate motions of the Arch Defendants[1] and Mercer Trust Company to dismiss the plaintiffs' amended complaint for failure to state a claim. Plaintiffs have responded, and the issues are fully briefed.

**I. Background**

Plaintiffs Douglas R. Roe, Elmer Bush, Ronald K. Huff, and Jerome McLaughlin, individually and as representatives of the Arch Coal, Inc. Employee Thrift Plan (the Plan), bring this consolidated class action pursuant to §§ 404, 405, 409 and 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1104, 1105, 1109 and 1132. Plaintiffs claim that the defendants breached duties of prudence and loyalty in administering the Plan. The defendants

---
[1] The Arch Defendants include all defendants other Mercer Trust Company.

are Arch Coal, its directors, the company officers who served as Plan Administrator and/or on the Retirement Committee (collectively, the Arch Defendants), and Mercer Trust, the Plan's trustee. The Plan is a retirement savings plan which required the Arch Coal Stock Fund (the Fund) to include Arch Coal stock as one of the investment options offered to Plan participants. During the period July 27, 2012 to November 12, 2015 (the Class Period), Arch Coal was the sponsor of the Plan.

According to the amended complaint, the Plan and its participants suffered tens of millions of dollars of losses during the Class Period, as the market price of Arch Coal Stock fell from approximately $680.00 on July 27, 2012 to $1.42 on November 12, 2015. On or about November 12, 2015, the Plan's investment in the Fund was forcibly liquidated. Before and during the Class Period "massive amounts of publicly-available information" about the collapse of the coal industry in general, and Arch Coal in particular, was generated. [Doc. #43, ¶6, 9-10, 85-399]. On January 11, 2016, Arch Coal filed for bankruptcy. Plaintiffs claim that the defendants failed to protect the interests of the Plan's participants and beneficiaries, in violation of the defendants' legal obligations under ERISA.

## II. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule

12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. *Scheuer*, 416 U.S. at 236. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see id.* at 563 (stating that the "no set of facts" language in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), "has earned its retirement"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–84 (2009) (holding that the pleading standard set forth in *Twombly* applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## II. Discussion

### A. Count I

ERISA imposes duties of loyalty and prudence on a plan fiduciary. 29 U.S.C. § 1104(a)(1)(A)-(B). The duty of prudence requires the fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The duty of prudence includes choosing wise investments and monitoring investments to remove imprudent ones. *Tibble v. Edison Int'l,* 135 S. Ct. 1823, 1828-1829 (2015).

In Count I of the amended complaint, the plaintiffs claim that the Arch Defendants breached their fiduciary duty by "failing to adequately monitor the

prudence of investment in Arch Stock for Plan beneficiaries and continuing to allow the investment of the Plan's assets in Arch Stock throughout the Class Period." [Doc. # 43 at ¶ 414]. The Arch Defendants argue that the allegations in Count I fail to state a claim for breach of any duty to manage the plan prudently and that plaintiffs' claim is foreclosed by the Supreme Court's decision in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 189 L. Ed. 2d 457 (2014).

In *Dudenhoeffer*, the Supreme Court wrote that "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible, as a general rule, at least in the absence of special circumstances." *Id.*, at 2471. Here, plaintiffs' claim rests on allegations that the Arch Defendants should have recognized from publicly available information alone that the market was improperly valuing Arch Coal stock. Courts applying *Dudenhoeffer* have concluded that allegations that fiduciaries breached their duties of prudence in managing employee stock ownership plans based upon public information revealing poor performance failed to state a claim. *See Saumer v. Cliffs Nat. Res. Inc.*, 853 F.3d 855, 862 (6th Cir. 2017) (finding that participants in an employee stock ownership plan failed to state a claim that fiduciaries breached their duty of prudence based on public information which revealed company's declining revenues, high operating costs, and unmanageable debt); *Coburn v. Evercore Trust Co., N.A.*, 844 F.3d 965, 969 (D.C. Cir. 2016) (foreclosing breach of prudence claims where fiduciaries relied on a stock price reflecting all publicly available information, absent allegations of special circumstances); *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56 (2d Cir. 2016) (interpreting *Dudenhoeffer* to foreclose

breach of prudence claims based on public information "irrespective of whether such claims are characterized as based on alleged overvaluation or alleged riskiness of a stock"). The Court concludes that the ruling in *Dudenhoeffer* applies in this case such that, absent allegations of special circumstances, plaintiffs cannot maintain a breach of prudence claim based on the fiduciaries' alleged failure to recognize public information indicating that the Arch Coal stock was improperly valued.

Plaintiffs argue that they plausibly alleged Arch Coal Stock was an imprudent investment for the Plan during the Class Period and claim the Supreme Court's opinion in *Tibble v. Edison Int'l* confirms the viability of their claims. 135 S. Ct. at 1829. Plaintiffs suggest that *Tibble's* holding that market-priced retail class mutual funds can be imprudent for retirement savings is incompatible with defendants' argument. In *Tibble,* the Court wrote that "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Id.* at 1826. In *Dudenhoeffer*, however, the Court agreed that "a fiduciary usually 'is not imprudent to assume that a major stock market…provides the best estimate of the value of the stocks traded on it that is available to him." 134 S. Ct. at 2471-72. [*quoting Summers v. State Street Bank & Trust Co.,* 453 F.ed 404, 408 (7th Cir. 2006). Therefore, applying both *Dudenhoeffer* and *Tibble*, a plaintiff could properly allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones, but not when the allegations are based upon publicly available information.

Plaintiffs also argue that *Tatum v. RJR Pension Inv. Comm.*, 855 F.3d 553, 564 (4th Cir. 2017), supports their position. *Tatum* does not address the *Dudenhoeffer* pleading standard at issue and was decided after a bench trial in which the district court found that a prudent fiduciary would have relied on the market price as a correct estimate of the present value of the stock. *Id.* at 564-65. Further, *Tatum* distinguishes *Dudenhoeffer*, noting that it "concerned allegations that the market overvalued a stock and that a fiduciary should have known the stock was overvalued because of public information," not loss causation which was at issue in *Tatum*. *Id*. at 566. Because the plaintiffs' claim here clearly concerns the allegation that, based on public information, the defendant fiduciaries should have known that the Arch Coal stock was overvalued, *Tatum* does not apply.

In support of their assertion that *Dudenhoeffer*'s special circumstances requirement does not apply to their claim, plaintiffs point to *Gedek v. Perez,* 66 F. Supp. 3d 368 (W.D.N.Y. 2014). In *Gedek*, the court ruled that *Dudenhoeffer*'s special circumstances requirement did not apply because there were no allegations of stock inflation. *Id.* at 379. Plaintiffs argues that *Gedek* more properly applies to their claims, and that *Dudenhoeffer* doesn't address the situation presented here where "a company's downward path was so obvious and unstoppable that, regardless of whether the market was 'correctly' valuing the stock, the fiduciaries should have halted or disallowed further investment in it." 66 F.Supp.3d at 375. Plaintiffs argue they are not required to plead facts that meet *Dudenhoeffer'*s special circumstances test because this is not a market value case. However, *Dudenhoeffer* explicitly addressed claims involving fiduciary duties of prudence based on publicly available information regarding publicly traded stock, as is the

case in this matter. Clearly, *Dudenhoeffer* is applicable. The Court declines to follow *Gedek*'s reasoning because *Dudenhoeffer* involved a case, like this one, where the plaintiff alleged that the fiduciary should have divested the plan of stock that had become excessively risky.

Plaintiffs have alleged the following special circumstances which they contend made it imprudent for the Arch Defendants to rely the Arch Coal stock price:

> (a) allegations of Arch's serious deteriorating condition, evidenced by an exceptional amount of negative publicly available information, coupled with the state of international coal markets, which was ignored by the Plan's fiduciaries in continuing to offer Company Stock; (b) Arch's overwhelming debt was unserviceable based upon its underlying business prospects and consistent quarterly losses; and (c) Defendants' failure to employ a reasoned decision making process in monitoring and evaluating Company Stock. [Doc. #43, ¶21]

In *Dudenhoeffer,* the Supreme Court declined to define the standard for a special circumstance that would permit a plaintiff to survive a motion to dismiss. *Id*., at 2472. However, the special circumstance would need to be pleaded as "affecting the reliability of the market price as an unbiased assessment of the security's value in light of all public information." *Id.* The Eighth Circuit has also not yet addressed the question of what "special circumstances" a plaintiff could allege at the pleading stage that would render reliance on the market price imprudent, however courts in this district have found that the Supreme Court intended to set the standard so high as to preclude cases involving a company's impending bankruptcy. *Lynn v. Peabody Energy Corp.*, 2017 WL 1196473, at *6 (E.D. Mo. Mar. 30, 2017) (finding that a company's impending bankruptcy was not a special circumstance contemplated by the Supreme Court in *Dudenhoeffer*). *Lynn* points to a number of cases outside of the Eighth Circuit supporting such a

determination. *See e.g., In re 2014 RadioShack ERISA Litig.*, 165 F. Supp. 3d 492, 504-05 (N.D. Tex. 2016) (holding that the a company's "slide into bankruptcy" rendering its stock excessively risky was not a "special circumstance" under *Dudenhoeffer*); *Pfeil v. State St. Bank & Trust Co.*, 806 F.3d 377, 380 (6th Cir. 2015) (holding that a company's "severe business problems that resulted, ultimately, in its bankruptcy" did not constitute a *Dudenhoeffer* special circumstance).

Following the reasoning of the above-cited cases, the Court finds that plaintiffs have not sufficiently pleaded special circumstances as required by ERISA and *Dudenhoeffer*. Plaintiffs' allegations of Arch Coal's "serious deteriorating condition" and "overwhelming debt" are evidence of the company's impending slide into bankruptcy but do not establish a special circumstance under *Dudenhoeffer*. Plaintiffs' allegation that defendants' failure to employ a reasoned decision making process in monitoring and evaluating Arch Coal stock also fails to establish a special circumstance under *Dudenhoeffer*. *See Saumer v. Cliffs Nat. Res. Inc.*, 853 F.3d 855, 862 (6th Cir. 2017) (upholding a district court's determination that alleging fiduciaries failure to engage in a reasoned decision-making process regarding the prudence of company stock did not constitute a special circumstance). Furthermore, plaintiffs' have failed to articulate how any of their special circumstance allegations impacted the reliability of the market price of Arch Coal stock.

According to the complaint, it was suggested that Participants "may be able to ride out the short-term declines" in Arch Coal stock "in hope for the long-term returns" they would need in order for their savings to outpace inflation. Amd.

Compl. ¶39 [Doc. #43]. Plaintiffs assert that this was a breach of ERISA's fiduciary duty of candor. The Plan's Summary Plan Description specifically provides: "[i]nvestment in a single stock, such as Arch Coal Common Stock, will generally be considered more risky than investment in a diversified mutual fund" and "[o]ne way to reduce your risk is by spreading your money among a mix of several different investment options." [Doc. #43-2, ARCH_000189]. Plaintiffs argue that blanket statements like these did not adequately describe the risks of Arch Coal stock. However, plaintiffs point to no obligation that requires defendants to provide additional warnings regarding the risks of company-issued stock. Furthermore, plaintiffs admit that defendants disclosed what the regulations require to be disclosed. Plaintiffs have failed to provide any facts or law to support their allegation that defendants violated their duty of candor.

Count I of the amended complaint will be dismissed.

### B. Count II

In Count II, plaintiffs claim that the Arch Defendants breached their duty of loyalty by continuing to allow the investment of the Plan's assets in Arch Coal stock throughout the Class Period despite the fact that they knew or should have known that such investment was imprudent as a retirement vehicle.[2] Plaintiffs allege that the Arch Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by

> failing to timely engage independent fiduciaries who could make independent judgments concerning the Plan's investment in the Company's own securities; and by otherwise placing their own and/or the Company's interests above the interests of the Participants with respect to the Plan's investment in Company Stock . . . by . . .

---

[2] Although Count II is brought against "all Defendants" (Amd. Compl., ¶ 423), plaintiffs state that they did not intend to include Mercer Trust.

>fostering a positive attitude toward Company Stock, and/or allowing Participants in the Plan to follow their natural bias towards investments in the equities of their employer by not disclosing negative material information concerning the imprudence of investment in Company Stock.

Amd. Compl. ¶¶ 427, 429 [Doc. # 43].

Plaintiffs have abandoned their allegation that failure to procure an independent fiduciary constitutes a breach of loyalty, instead suggesting that this was just an illustration of a potential course of action for defendants. Plaintiffs do not present any support for their allegation that defendants breached their duty of loyalty by allowing participants in the Plan to follow their "natural bias."

The ERISA duty of loyalty includes the duty to avoid conflicts of interest. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251–52 (1993) (citing *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142–143 (1985)); *see also* 29 U.S.C. § 1104(a). The duty of loyalty is breached when a plan administrator participates knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense. *Crocker v. KV Pharm. Co.*, 782 F. Supp. 2d 760, 785 (E.D. Mo. 2010) (citing *Christensen v. Qwest Pension Plan,* 462 F.3d 913, 917 (8th Cir.2006)). Here, plaintiffs assert that the Arch Defendants had a conflict of interest because their compensation was tied to Arch Coal. Plaintiffs have cited a number of cases they claim support their claim.

In *In re Wilmington Trust Corp. ERISA Litig.*, 943 F. Supp. 2d 478, 492 (D. Del. 2013), the court denied a motion to dismiss in which an alleged conflict of interest was based on the fact that the defendants' compensation was tied to company stock. However, the defendants also allegedly had information that was

inconsistent with the financial condition publicly presented. The court in *In re Wilmington Trust* recognized that compensation tied to stock prices, without more, is not necessarily enough to show the existence of a breach of duty of loyalty or a conflict of interest. *Id*. In *In re Advanta Corp. ERISA Litig.*, 2011 WL 4528341, at *4 (E.D. Pa. Sept. 30, 2011), the court denied a motion to dismiss in which a conflict of interest was alleged. However, plaintiffs had alleged that, in addition to the fact that defendants' compensation was tied to the price of company stock, defendants had sold their own stock holdings while failing to protect the plan participants. In *In re Westar Energy, Inc., ERISA Litig.*, 2005 WL 2403832, at *21–22 (D. Kan. Sept. 29, 2005), the court denied a motion to dismiss a duty of loyalty claim, based upon a conflict of interest, when the defendants, whose compensation was tied to company stock prices, allegedly misled members of the board of directors, attempted to trigger golden parachutes, and gave themselves unauthorized benefits. In *In re ADC Telecommunications, Inc., ERISA Litig.*, 2004 WL 1683144, at *8 (D. Minn. July 26, 2004), the court denied a motion to dismiss a duty of loyalty claim, premised upon a conflict of interest, when the plaintiffs alleged that several executives sold their holdings based on information that should have been, but was not, shared with plan participants.

The cases plaintiffs rely on are distinguishable from the instant case. In each of the above-cited cases, the plaintiffs' allegations went beyond compensation being tied to the price of company stock, but to other actions by the defendants in which they knowingly misled, deceived, or acted adversely to the interests of the plan participants. Here, plaintiffs' mere allegation that the Arch Defendants owned Arch

Coal stock and maintained options and stock awards is insufficient to state a claim of breach of the duty of loyalty.[3] Therefore, Count II will be dismissed.

### C. Count III

In Count III, plaintiffs claim that the Arch Defendants breached their fiduciary duties by: failing to monitor their appointees in administration of the Plan; failing to evaluate their performance, and failing to have a proper system in place for doing so; failing to ensure the monitored fiduciaries "appreciate the true extent" of Arch Coal's situation; failing to provide complete and accurate information to their appointees; and failing to remove inadequately performing appointees. Amd. Compl. ¶¶ 438-444 [Doc. #43]. Plaintiffs concede that their monitoring and co-fiduciary claims are derivative of their prudence and disclosure claims. Further, the Eighth Circuit has ruled that a derivative claim, such as a claim alleging a breach of the duty to monitor, cannot survive without a sufficiently pled theory of an underlying breach. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010). Because plaintiffs have failed to state a claim for an underlying breach of fiduciary duty, plaintiffs' claims for failure to adequately monitor these fiduciaries must also fail. Count III will be dismissed.

### D. Count IV

ERISA provides that a directed trustee is "subject to proper directions of such fiduciary which are made in accordance with the terms of the plan." 29 U.S.C. § 1103(a)(1). Section 403(a) of ERISA prescribes the duties of a fiduciary acting as a directed trustee. *Id.* Specifically, § 403(a) requires a directed trustee to comply

---

[3] Plaintiffs argue that defendants would have them prove every disloyal act they claim defendants took during the Class Period. The Court disagrees. Only one allegation of a disloyal act is necessary to allow this claim to go forward. Plaintiffs have not alleged any.

with the directions of a named fiduciary. *See e.g., Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994) (noting that an ERISA directed trustee may only act upon directions from the named fiduciary in accordance with the terms of the plan). Thus, a directed trustee under § 403(a) has no duty to assess the merits of a named fiduciary's direction and to reject that direction, even if, in the exercise of the directed trustee's independent judgment, the direction is imprudent. *Id*.; *see also* 29 U.S.C. §1103(a).

In Count IV, plaintiffs claim that Mercer failed to prudently and loyally manage the Plan's assets. Plaintiffs specifically allege that Mercer knew or should have known that Arch Coal stock was not a suitable and appropriate investment for the Plan. Yet, despite knowledge of the imprudence of the investment, Mercer failed to take any meaningful steps to protect Plan participants from sustaining losses and failed to divest the Plan of the stock. Plaintiffs further allege that Mercer also breached its co-fiduciary obligations by "knowingly participating in the failure of the Plan's other fiduciaries to protect the Plan from inevitable losses." Amd. Compl, ¶ 457 [Doc. # 43]. According to the complaint, Mercer had or should have had knowledge of breaches by the other fiduciaries of the Plan but made no effort to remedy them.

Plaintiffs argue that the publicly available information alleged in the complaint was sufficient to give Mercer notice to take action to protect the Plan. Plaintiffs note that Mercer was a Plan fiduciary and that ERISA requires directed trustees only follow instructions "which are not contrary to" ERISA's fiduciary duties. 29 U.S.C. §1103(a). Plaintiffs argue that Mercer thus had the authority, and duty under ERISA, to not follow instructions to invest Plan assets in Arch Coal

- 13 -

Stock. The parties agree that the Department of Labor's Field Assistance Bulletin No. 2004-03 should be used to determine the plausibility of plaintiffs' claims. *See* Department of Labor, Field Assistance Bulletin No. 2004-03, (Dec. 17, 2004), https://www.dol.gov/ebsa/pdf/fab-2004-3.pdf (hereinafter, the "FAB").

The FAB provides that "a directed trustee is a fiduciary under ERISA and must exercise its duties prudently and solely in the interest of the plan participants and beneficiaries. *Id*. at 7. The FAB also provides that "when a directed trustee knows or should know that a direction from a named fiduciary . . . is contrary to ERISA, the directed trustee may not, consistent with its fiduciary responsibilities, follow the direction. *Id*. at 2-3. The FAB further provides that in "limited, extraordinary circumstances, where there are clear and compelling public indicators . . . that call into serious question a company's viability as a going concern, the directed trustee may have a duty not to follow the named fiduciary's instruction without further inquiry." *Id*. at 5-6. The FAB used a bankruptcy filing or similar public indicator as examples of clear and compelling public indicators. *Id*. at 5-6. As an example, the FAB also stated that in a situation where a company filing for bankruptcy under circumstances which make it unlikely that there would be any distribution to equity-holders, or otherwise publicly stated that it was unlikely to survive the bankruptcy proceedings in a manner that would leave current equity-holders with any value, the directed trustee would have an obligation to question whether the named fiduciary has considered the prudence of the direction. *Id*. at 6. Courts applying the FAB's direction have recognized that a formal bankruptcy filing is the "proper trigger for a duty of inquiry by the directed trustee. *In re Avon Prod., Inc. Sec. Litig.*, 2009 WL 848083, at *18 (S.D.N.Y. Mar. 3, 2009) (citing *Field*

*Assistance Bulletin No. 2004-03* at 6, n. 6). The court in *In re Avon* further ruled that the public acknowledgement of the possibility of bankruptcy nor the hiring of bankruptcy counsel were sufficient to trigger the directed trustee's duty to question the prudence of the named fiduciary's directions. *Id.* Furthermore, "[k]nowledge that a company's fortunes are declining does not impose a duty of inquiry." *In re WorldCom, Inc. ERISA Litig.*, 354 F. Supp. 2d 423, 449 (S.D.N.Y. 2005) (citing *Lalonde v. Textron, Inc.,* 369 F.3d 1, 7 (1st Cir.2004)). Here, plaintiffs allege that Mercer should have been aware that bankruptcy was imminent based upon public statements and general industry knowledge. However, the duty of inquiry was not triggered until January 11, 2016, when Arch Coal filed for bankruptcy. The Plan's investment in the Fund was forcibly liquidated two months earlier on November 12, 2015. The plaintiffs' allegations do not rise to the level of limited, extraordinary circumstances that would establish a duty of inquiry for the directed trustee because the Plan's investment in the Fund was liquidated prior to the trigger for the duty of inquiry.

Because there was no breach of duty on behalf of the Arch Defendants, Mercer cannot be liable as a co-fiduciary for the same conduct. *See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 580 (S.D.N.Y. 2011) (requiring antecedent breaches of fiduciary duties by co-fiduciaries to be viable); *In re Citigroup Erisa Litig.*, 2009 WL 2762708, at *27 (S.D.N.Y. Aug. 31, 2009), *aff'd sub nom. In re Citigroup ERISA Litig.*, 662 F.3d 128 (2d Cir. 2011) (dismissing a claim of co-fiduciary liability because plaintiffs' failed to allege breach of fiduciary responsibility of another fiduciary); *In re Avon Prod., Inc. Sec. Litig.*, 2009 WL 848083, at *18 (S.D.N.Y. Mar. 3, 2009) (concluding that because

plaintiffs failed to plead a basis for liability by any of the defendants, the claim for co-fiduciary liability also failed). Accordingly, Mercer's motion to dismiss Count IV will be granted.[4]

.                                  *   *   *   *   *

For the reasons set out above,

**IT IS HEREBY ORDERED** that the motion of the Arch Defendants to dismiss [Doc. #46] is **granted**.

**IT IS FURTHER ORDERED** that the motion of defendant Mercer Trust Company to dismiss [Doc. #49] is **granted**.

**IT IS FURTHER ORDERED** that the joint motion to stay discovery [Doc. #63] is **denied as moot**.

**IT IS FURTHER ORDERED** that the motion of defendant Mercer Trust Company for leave to file supplemental authority [Doc. # 74] is **denied as moot**.

An order of dismissal will be filed separately.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 4th day of August, 2017.

---

[4] Plaintiffs argue that if the action is dismissed, the dismissal should be without prejudice because they plausibly alleged that defendants failed to undertake a reasoned investigation and failed to avoid and resolve conflicts of interest. However, the dismissal is grounded on plaintiffs' failure to plausibly allege a conflict of interest or duty to undertake a reasoned investigation. Plaintiffs have also failed to identify any basis for further amendment of the complaint. The dismissal will be with prejudice.